UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**Michael Picard**,
*Plaintiff*

*v.*                                                                                                                  No. 16-cv-1564

**Patrick Torneo**, **John Jacobi**, and **John Barone**,
*Defendants*

### Plaintiff's Motion for Partial Summary Judgment

Plaintiff Michael Picard alleges in his complaint that the three police defendants to this action violated his First and Fourth Amendment rights when they prevented him from video-recording them doing their jobs in public, and charged him with bogus criminal infractions in retaliation for his activities. In their answer [ECF # 10], the defendants claim ignorance of a surprising range of basic facts, but admit enough to create an undisputed fact record compelling judgment in Mr. Picard's favor on his Fourth Amendment claim against defendant John Barone. So, he now moves for partial summary judgment on Count Two of his complaint.

1.      **Undisputed Facts Material to Count Two**

On the evening of September 11, 2015, the Connecticut State Police operated a driving under the influence (DUI) checkpoint in West Hartford.[1] All three defendants to this suit were uniformed Connecticut State Police employees who were on duty that evening.[2] Michael Picard encountered the three defendants several hundred feet away from the checkpoint.[3]

During the encounter, defendant John Barone pat-frisked Mr. Picard and seized

---

1   Plaintiff's D. Conn. Local R. 56(a)(1) Statement ¶ 1.  Mr. Picard's Local Rule Statement is appended to this motion.
2   *Id.* ¶ 2.
3   *Id.* ¶ 3.

1

the pistol that Mr. Picard had been openly carrying in a holster.[4]  Barone also seized Mr. Picard's pistol permit,[5] which was valid.[6]

Barone did not handcuff Mr. Picard, tell him that he was being detained, place him under arrest, or instruct Picard to sit down or stay in one place.[7]  Instead, Barone took the seized pistol and permit over to the edge of the gore[8] where Mr. Picard had been standing.[9]  There, Barone joined defendant John Jacobi at the window of defendant Patrick Torneo's police cruiser, in which Torneo was at the wheel.[10]  At their conclave, the defendants discussed Mr. Picard.[11]

While the defendants were talking, Mr. Picard picked up his digital camera and aimed it at the three.[12]  Barone walked quickly back to Mr. Picard,[13] grabbed Picard's camera, and told him that "it's illegal to take my picture."[14]  Barone said that Mr. Picard was forbidden to take Barone's picture because Mr. Picard did not "get any documentation" from Barone allowing photography of him.[15]  Barone took Mr. Picard's camera back over to Torneo and Jacobi, and placed it on the roof of Torneo's cruiser.[16]

Neither Jacobi nor Torneo objected to the camera's seizure.[17]  The three defendants left Mr. Picard's camera on the roof of the cruiser while they discussed Picard.[18]  The defendants did not return the camera to Mr. Picard until they ended their encounter with him.[19]  None of the defendants ever examined the camera, searched it, or

---

4  Plaintiff's D. Conn. Local R. 56(a)(1) Statement ¶ 4.
5  *Id.* ¶ 5.
6  *Id.* ¶ 6.
7  *Id.* ¶ 7.
8  A gore is a small, often triangular, piece of land.  Black's Law Dictionary 810 (10th ed. 2014).
9  *Id.* ¶ 8.
10 *Id.* ¶ 9.
11 *Id.* ¶ 10.
12 *Id.* ¶ 11.
13 *Id.* ¶ 12.
14 *Id.* ¶ 13.
15 *Id.* ¶ 14.
16 *Id.* ¶ 15.
17 *Id.* ¶ 16.
18 *Id.* ¶ 17.
19 *Id.* ¶ 18.

treated it as evidence.[20]  None of the defendants told Mr. Picard that they had a warrant to seize his camera,[21] and so Mr. Picard believes that the defendants did not have one.[22]

The three defendants discussed charging Mr. Picard with crimes.[23]  The defendants charged Mr. Picard with two criminal infractions: violating Conn. Gen. Stat. § 53-182 (use of a highway by a pedestrian), and violating Conn. Gen. Stat. § 53a-181a (creating a public disturbance).[24]  After Mr. Picard was given a copy of the infractions charges, the defendants returned his camera to him.[25]

The two infraction charges initiated a criminal prosecution against Mr. Picard in the Connecticut Superior Court with docket number H15N-CI-150959171-S.[26]  In May 2016, prosecutors filed a superseding, long-form information against Mr. Picard that omitted the public disturbance charge against him.[27]  Finally, in July 2016, prosecutors ended the case by entering a *nolle prosequi* on the one remaining charge against Mr. Picard, for negligent use of the highway.[28]  The net result of the superior court prosecution was that Mr. Picard was not convicted of any charges.[29]

In the part of his complaint relevant to this motion, Mr. Picard alleges that John Barone violated his Fourth Amendment right against unlawful search or seizure when he took Mr. Picard's camera from him and kept it until the defendants ended their encounter with Mr. Picard.[30]

---

20 *Id.* ¶ 19.
21 *Id.* ¶ 20.
22 *See* Compl. ¶ 88 (alleging that the defendants lacked a warrant for the camera).
23 *Id.* ¶ 21.
24 *Id.* ¶ 22.
25 *Id.* ¶ 23.
26 *Id.* ¶ 24.
27 *Id.* ¶ 25.
28 *Id.* ¶ 26.
29 *Id.* ¶ 27.
30 Compl. ¶ 88.

## 2.  Judgment Should Enter as to Count Two, Because Defendant Barone Seized Mr. Picard's Camera in Contravention of the Fourth Amendment

As relevant to Count 2 of his complaint, the Fourth Amendment guaranteed Mr. Picard the right "to be secure in [his] . . . effects, against unreasonable . . . seizures." The Amendment's protections govern any meaningful governmental interruption of a person's possessory interest in an object, however brief, *United States v. Jacobsen*, 466 U.S. 109, 113, 113 n.5 (1984), and regardless of whether the object is searched. *Soldal v. Cook County*, 506 U.S. 56, 62-64 (1992). On the admitted facts, there are only two avenues by which Barone could have taken Mr. Picard's camera away from him without violating the Fourth Amendment. Most obviously, Barone might have obtained a warrant for its seizure upon demonstrating probable cause for taking the camera, but he did not.

Alternatively, Barone could have temporarily seized the camera in anticipation of obtaining a search warrant if he had reasonable articulable suspicion to believe that the camera "contain[ed] contraband or evidence of a crime." *United States v. Place*, 462 U.S. 696, 702 (1983) (applying the principles of a *Terry* stop of a person to the investigatory detention of an object). In order for such a seizure to be lawful, the public employee's "'action [must have been] justified at its inception,'" and the seizure must have been "'reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Hooper*, 935 F.2d 484, 493 (2d Cir. 1991) (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)). Defendant Barone's seizure of Mr. Picard's camera was neither, and so Barone is liable to Mr. Picard on Count Two.

4

### 2.1 Seizure of the Camera Was Not Justified at Its Inception, Because the Camera Was Unconnected to Criminal Activity

The first prong of *Place* asks whether the public employee's seizure of an object was justified at its inception. In order to satisfy this inquiry, the government defendant must prove that "at the point of seizure, [he] had at least a reasonable suspicion based on specific articulable facts" that the object contained, or was itself, contraband, *Hooper*, 935 F.2d at 493, or that the object was, or contained, evidence of crime. *Place*, 462 U.S. at 702. In Barone's own words, there was only one rationale for taking Mr. Picard's camera: because it was purportedly "illegal to take my picture."[31] But Connecticut has no criminal prohibition against possessing a camera, or against photography of public servants performing their job duties in public. Mr. Picard's camera therefore was neither contraband nor evidence of a non-existent photography crime. Inescapably, the camera's seizure was not justified.

At all relevant times to this dispute, there was no Connecticut statute forbidding Mr. Picard from either carrying a camera with him as he was on September 11, 2015, or from photographing public employees working in plain view on the side of a street.[32] Without a statute to point to, Barone might be expected to claim that he merely *thought* that state law forbade possession of a camera, or the photography of government employees working on public streets. But an abysmal familiarity with Connecticut's criminal code cannot forestall judgment against Barone. On occasion, a government employee's mistaken understanding of the law can give rise to reasonable suspicion of

---

31 Ptf.'s D. Conn. Local R. 56(a)(1) Statement ¶ 13. "[T]he subjective intent of the officers is relevant to an assessment of the Fourth Amendment implications of police conduct only to the extent *that that intent has been conveyed to the person* confronted," *Michigan v. Chesternut*, 486 U.S. 567, 575 n.7 (1988) (emphasis added), so Defendant Barone is bound by what he admittedly told Mr. Picard was the reason for snatching the camera.
32 To the contrary: two months before the parties' encounter, Connecticut's governor signed a bill creating a private right of action for an aggrieved photographer or videographer whenever police "interfere[] with any person taking a photographic or digital still or video image of such p[olice] officer or another p[olice] officer acting in the performance of such p[olice] officer's duties." 2015 Conn. Acts 1636-1637 (codified at Conn. Gen. Stat. § 52-571j(b)) (effective Oct. 1, 2015).

criminality. *Heien v. North Carolina*, 135 S. Ct. 530, 539 (2014). However, the Fourth Amendment "tolerates only *reasonable* mistakes, and those mistakes—whether of fact or of law—must be *objectively* reasonable." *Id.* So, close calls interpreting confusing motor vehicle or criminal statutes may come within *Heien*'s ambit. *See id.* at 540 (traffic stop for one non-functional taillight reasonable mistake where applicable statutes referred to a "stop lamp" in the singular, but also required cars to "have all originally equipped rear lamps . . . in good working order") (internal quotations omitted); *United States v. Diaz*, 122 F. Supp. 3d 165, 175 (S.D.N.Y. 2015) (reasonable mistake of law to interpret apartment stairwell as covered by open container law where statutory language was very broad, and state courts had split on its scope).

Where the law plainly does not address the conduct at issue, *Heien* offers no assistance to government employees who get it wrong by imagining offenses. The Seventh Circuit, for example, held that *Heien* could not create reasonable suspicion for the traffic offense of failing to signal when parking at a curb, where the Illinois statute cited did not address parking. *United States v. Stanbridge*, 813 F.3d 1032, 1037-8 (7th Cir. 2016). The Sixth Circuit held *Heien* to be of no assistance to police who stopped and frisked a man openly carrying a firearm even though Ohio law has no prohibition against open carry. *Northrup v. City of Toledo Police Dep't*, 785 F.3d 1128, 1132 (6th Cir. 2015). The Fifth Circuit held that *Heien* did not salvage a traffic stop for a driver's allegedly violating a turn signal statute that only applied to turns, not to the lane-change that the driver made. *United States v. Alvarado-Zarza*, 782 F.3d 246, 250 (5th Cir. 2015). And the Southern District held that *Heien* cannot create suspicion where police stopped a motorist for having two functional taillights and a burnt-out center high-mounted brake light, because the New York traffic code only required two functioning

6

brake lights.  *United States v. Mota*, 155 F. Supp. 3d 461, 474 (S.D.N.Y. 2016).

Such is the situation for Defendant Barone.  No law prohibited Mr. Picard from using his camera on a public street, or from taking the picture of a public employee doing his job in public.  So Barone should "gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound to enforce," *Heien*, 135 S. Ct. at 539–40, and cannot claim that he had reasonable suspicion that the camera was a prohibited item or evidence of a non-existent photography offense.  His seizure of the camera was not justified at its inception.

### 2.2   The Seizure of Mr. Picard's Camera Bore No Relation Whatsoever to the Defendants' Investigation of Mr. Picard

The second criterion that an investigatory object seizure must satisfy is its relation to the reasons for the seizure.  In order to pass muster, such a seizure must be "reasonably related in scope to the circumstances which justified it initially."  *Hooper*, 935 F.2d at 494 (internal quotation omitted).  The proportionality of the seizure's intrusiveness to the suspicion used to justify it is a required element of the analysis because "[t]he reasonableness requirement of the Fourth Amendment applies not only to prevent . . . seizures that would be unreasonable if conducted at all, but also to ensure reasonableness in the manner and scope of . . . seizures that are carried out."  *Ayeni v. Mottola*, 35 F.3d 680, 684 (2d Cir. 1994).  Investigatory object seizures are only permitted upon reasonable suspicion, so the permissible level of government intrusion occasioned by the seizure is quite low: only "minimally intrusive."  *Place*, 462 U.S. at 706.  For any seizure more intrusive than a minimal one, the government needs probable cause.  *E.g., $557,933.89*, 287 F.3d at 86.  Hence, if a seizure is completely unrelated to any reasonable suspicion existing at the outset of the seizure, or imposes a

7

sufficiently serious hardship upon the object's owner, the seizure is unconstitutional. The undisputed facts of this litigation demonstrate that Defendant Barone seized Mr. Picard's camera but never undertook any investigation to prove or disprove any suspicions he had about the device. The seizure was therefore unrelated in scope to any justification Barone may have had for taking the device, and was unlawful as a result.

An illustrative example of how a purposeless, punitive seizure fails to meet *Place* comes from the Sixth Circuit. In *Bennett v. City of Eastpointe*, that court was faced with a number of Fourth Amendment claims stemming from the defendant suburb's practice of stopping young Black bicyclists who rode across the city line from Detroit. 410 F.3d 810, 819-824 (6th Cir. 2005) (recapping each incident at issue). In one such incident, the police lawfully stopped the plaintiffs for riding two to a bike in violation of Michigan's traffic code. *Id.* at 824. The police checked the boys' bikes' serial numbers against a stolen bike database, which verified that the bikes were not stolen. *Id.* at 823. But instead of releasing the bikes, the police took the bikes and told the boys that they could pick their bikes up at the Eastpointe police station upon "proof of ownership or a statement from a parent or guardian regarding ownership." *Id.* at 825. The defendant municipality eventually sold the bikes at auction. *Id.* at 824.

The Sixth Circuit assumed without deciding that some brief seizure of the bikes in order to check their serial numbers against the stolen bike database was justified at its inception by reasonable suspicion. *Id.* at 826. But the court held that detention beyond that point was unrelated in scope to the initial justification, as there was "no justifiable purpose" for holding the bikes further. *Id.* In support, the court pointed to the fact that the police purportedly held the bikes beyond the database check to perform further investigation, yet the record contained "no indication . . . that the [police] officers ever

8

investigated further." *Id.* The failure to perform any investigation on the seized bikes unconstitutionally "reversed the onus under the Fourth Amendment and placed the burden on the youths to demonstrate that the bikes were not stolen." *Id.*

Defendant Barone committed the same Fourth Amendment violation when he took Mr. Picard's camera and did nothing with it. Whatever the initial justification of the camera's seizure (and there was none), what happened to the camera afterwards must have been reasonably related in scope to that justification in order to be lawful. *Hooper*, 935 F.2d at 494. But just as in *Bennett*, the defendant in this case undertook zero investigative effort after seizing the object. He put it upside-down on the roof of a police car, did not treat it as evidence, and did not examine it in any way. The seizure had "no justifiable purpose," *Bennett*, 410 F.3d at 826, and was purely a punitive confiscation by a public servant who did not want to be photographed doing his job.

Confirmation of Defendant Barone's liability comes from our own circuit's teachings on purposeless seizures. In *Lauro v. Charles*, the Second Circuit held that staged, post-booking "perp walks," in which an arrestee is paraded in front of news media, are not reasonably related in scope to the initial seizure of the suspect and are therefore unconstitutional. 219 F.3d 202, 213 (2d Cir. 2000). In that case, John Lauro was arrested and booked at a municipal police station for a variety of minor property offenses. *Id.* at 204. Two hours after his arrival at the station, the police department called the news media to the station house, and then had a detective take Lauro out of the station, drive him around the block, and walk him back into the station, handcuffed, in front of the media. *Id.* Lauro later sued, contending that the perp walk violated his Fourth Amendment rights. The Second Circuit agreed with him after analyzing the situation as a *Terry* stop. *Id.* at 211-212. The court held that the seizure caused by

9

forcing Lauro out of the police station, around the block, and back into the police station past the media "lacked any legitimate law enforcement purpose," and was therefore not related to the justification for seizing Lauro in the first place, *i.e.*, his booking. *Id.* at 213. The Fourth Amendment injury, explained the court, was that the perp walk "exacerbat[ed] Lauro's seizure" while being "unrelated to the object of [his] arrest" and having "no purpose." *Id.*

Here, Mr. Picard suffered precisely the same Fourth Amendment injury when his camera was taken by Defendant Barone. Whatever the justification was for taking the camera from Mr. Picard in the first place, the camera's detention on top of the state police police cruiser served no law enforcement purpose, as evidenced by the defendants' complete ignorance of the device.

### 3. Conclusion

Because John Barone took Michael Picard's camera away from him without any lawful justification, and because he kept the camera away from Mr. Picard for the duration of their encounter for no investigative purpose, judgment should enter in Mr. Picard's favor on Count Two against Barone.

|  |  |
|---|---|
|    /s/ Dan Barrett    |   /s/ Joseph R. Sastre   |
| Dan Barrett (# ct29816) | Joseph R. Sastre (# ct28621) |
| ACLU Foundation of Connecticut | The Law Office of Joseph R. Sastre, LLC |
| 765 Asylum Avenue, 1st Floor | 67 Chestnut Street |
| Hartford, CT 06105 | Bristol, CT 06010 |
| (860) 471-8471 | (860) 261-5643 |
| e-filings@acluct.org | joseph.sastre@gmail.com |

May 1, 2017
*Counsel for Mr. Picard*

## Plaintiff's D. Conn. Local R. 56(a)(1) Statement

1. On the evening of September 11, 2015, the Connecticut State Police operated a driving under the influence (DUI) checkpoint in West Hartford, Connecticut.
   Source: Complaint [ECF # 1] ¶ 15; Answer [ECF # 10] ¶ 15.

2. All three defendants to this suit were uniformed Connecticut State Police employees who were on duty that evening.
   Source: Compl. ¶¶ 10-13; Ans. ¶¶ 10-13.

3. Plaintiff Michael Picard encountered the three defendants within several hundred feet of the checkpoint.
   Source: Compl. ¶ 47(plaintiff pat-frisked by Defendant Barone a short walk away from Defendants Torneo and Jacobi); Ans. ¶ 47 (admitting); Compl. ¶ 69 (Defendant Barone retrieved his police vehicle from the checkpoint, several hundred feet from where the three defendants had been standing); Ans. ¶ 69 (admitting).

4. Defendant Barone pat-frisked Mr. Picard and seized the pistol that Mr. Picard had been openly carrying in a holster.
   Source: Compl. ¶ 43; Ans. ¶ 43.

5. Barone also seized Mr. Picard's pistol permit.
   Source: Compl. ¶ 43; Ans. ¶ 43.

6. Mr. Picard's pistol permit was valid.

    Source: Compl. ¶ 62; Ans. ¶ 62.

7. Barone did not handcuff Mr. Picard, tell him that he was being detained, place him under arrest, or instruct Picard to sit down or stay in one place.

    Source: Compl. ¶ 46; Ans. ¶ 46.

8. Barone took the pistol and permit over to the edge of the gore where Mr. Picard had been standing.

    Source: Compl. ¶ 47; Ans. ¶ 47.

9. On the edge of the gore, Barone stood with Defendant Jacobi at the window of Defendant Torneo's police cruiser. Torneo was at the wheel of the cruiser.

    Source: Compl. ¶ 47; Ans. ¶ 47.

10. At the edge of the gore, the defendants discussed Mr. Picard.

    Source: Compl. ¶ 47; Ans. ¶ 47.

11. While the defendants were talking at Torneo's cruiser, Mr. Picard picked up his digital camera and aimed it at the three.

    Source: Compl. ¶ 48; Ans. ¶ 48.

12. Barone then walked quickly back to Mr. Picard.

    Source: Compl. ¶ 48; Ans. ¶ 48.

12

13. Barone grabbed Mr. Picard's camera, and told Mr. Picard that "it's illegal to take my picture."

    Source: Compl. ¶¶ 50-51; Ans. ¶¶ 50-51.

14. Barone said that Mr. Picard was forbidden to take Barone's picture because Mr. Picard did not "get any documentation" from Barone allowing photography of him.

    Source: Compl. ¶ 51; Ans. ¶ 51.

15. Barone took Mr. Picard's camera back over to Torneo and Jacobi, and placed it on the roof of Torneo's cruiser.

    Source: Compl. ¶ 56; Ans. ¶ 56.

16. Neither Jacobi nor Torneo objected to the camera's seizure.

    Source: Compl. ¶ 57; Ans. ¶ 57.

17. The three defendants left Mr. Picard's camera on the roof of the cruiser while they discussed Picard.

    Source: Compl. ¶ 59; Ans. ¶ 59.

18. The defendants did not return the camera to Mr. Picard until they ended their encounter with him.

    Source: Compl. ¶ 59; Ans. ¶ 59.

19. None of the defendants ever examined the camera, searched it, or treated it as evidence.

    Source: Compl. ¶ 59; Ans. ¶ 59.

20. None of the defendants told Mr. Picard that they had a warrant to seize his camera.

    Source: Motion for Partial Summ. J. Ex. A, Declaration of Michael Picard ¶ 4.

21. The three defendants discussed charging Mr. Picard with crimes.

    Source: Compl. ¶¶ 72-77; Ans. ¶¶ 72-77 (admitting, except for the final sentence of ¶ 74, and the words "of how to present the fabricated charge against Mr. Picard" in ¶ 75).

22. The defendants charged Mr. Picard with two criminal infractions: violating Conn. Gen. Stat. § 53-182 (use of a highway by a pedestrian) for standing on the gore, and with violating Conn. Gen. Stat. § 53a-181a (creating a public disturbance) for carrying an "exposed loaded side arm in plain view of passing motorists," and "holding a weapon in his hand."

    Source: Compl. Ex. D; Declaration of Michael Picard ¶ 5 (authenticating Complaint Exhibit D).

23. After Mr. Picard was given a copy of the infractions charges, Torneo started to drive off. Mr. Picard's camera fell from the roof of Torneo's cruiser onto its hood, and Jacobi returned the camera to Mr. Picard.
    Source: Compl. ¶ 79; Ans. ¶ 79.

24. The infraction charges began a criminal prosecution of Mr. Picard in the Connecticut Superior Court bearing docket number H15N-CI-150959171-S.
    Source: Picard Decl. ¶ 6.

25. On May 4, 2016, prosecutors filed a long-form information against Mr. Picard that omitted the public disturbance charge against him.
    Source: Ex. A to Ptf.'s Mot. for Partial Summ. J.; Picard Decl. ¶ 7.

26. On July 15, 2016, prosecutors entered a nolle prosequi on the one remaining charge against Mr. Picard, for negligent use of the highway.
    Source: Picard Decl. ¶ 8.

27. Mr. Picard was not convicted of either of the two charges that were laid against him by the defendants.
    Source: Picard Decl. ¶ 9.

## Certificate of Service

I certify that a copy of foregoing and all of its exhibits was filed electronically on May 1, 2017. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                                                                                                             /s/ Dan Barrett
                                                                                                                                             Dan Barrett