UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**Michael Picard**,
*Plaintiff*

*v.*                                                                    No. 16-cv-1564

**Patrick Torneo**, **John Jacobi**, and **John Barone**,          January 24, 2019
*Defendants*

## Motion to Strike Testimony of Stavros Mellekas

In this § 1983 litigation, plaintiff Michael Picard alleges that three Connecticut state troopers violated his First and Fourth Amendment rights as he protested a DUI checkpoint on September 11, 2015. The defendants have offered state trooper Stavros Mellekas as an expert on their behalf, and Mr. Mellekas proposes three opinions to the Court. As none of his opinions are admissible, the Court should strike Mr. Mellekas's testimony in its entirety.

1.      **Facts**

Much of the events giving rise to Mr. Picard's claims were captured on his video camera after it was seized by the defendants. After encountering him at the site of his protest, the defendants took Mr. Picard's camera and placed it on the roof of a state police cruiser, where it recorded their conversations.[1] Based on the recording of those conversations, Mr. Picard alleges–in relevant part–that the defendants retaliated against him in violation of the First Amendment.[2]

In January 2018, the defendants disclosed Mr. Mellekas as one of their proposed

---

1  *See* Answer [ECF # 10] ¶¶ 49, 50, 56, 57, 59.
2  Complaint [ECF # 1] ¶¶ 62-78, 89.

experts, and Mr. Picard deposed him a month later.  Discovery closed on January 22,

2019, and dispositive motions are due on March 15th.  ECF ## 62, 64.

 Mr. Mellekas's purported expertise stems from his being assigned sometime in

2016 to conduct a state police internal affairs investigation of the defendants' treatment

of Mr. Picard.[3]  Mellekas did not decide which state police rule violations would be the

subject of his inquiry; those choices had been made for him by his superiors.[4]  In

December 2016, after obtaining the approval of his superior,[5] Mellekas issued a final

report concluding that no rule violations had occurred.[6]

 Consistent with his Fed. R. Civ. P. 26(a)(2)(C) summary,[7] Mellekas specified at

deposition that he wishes to offer the Court a small number of opinions.[8]  The first two

concern the conversation between the defendants captured by Mr. Picard's camera.[9]

Opinion # 1 posits that the defendants' conversation was intended to ensure that the

criminal charges laid against Picard were appropriate, and that probable cause existed

for the charges being discussed.[10]  Opinion # 2 ventures that the same conversation is

similar to conversations that Mellekas has heard throughout his career as a police

---

3 Mellekas Depo. 46:12-22.  The transcript of Mr. Mellekas's deposition is attached to this motion as Appendix A.
4 *Id.* 46:12-48:23; 49:2-15.
5 *Id.* 67:15-68:2.
6 *Id.* 72:5-10.
7 That summary is attached to this motion as Appendix B.
8 Mellekas Depo. 25:25-26:3 (confirming that he proposes no other testimony than that disclosed in writing).
9 *Id.* 75:23-76:2.  *See id.* 76:13-19 (testifying that the recording by Mr. Picard's camera is "almost like a surveillance . . . [i]t's just happenstance, if you will, that that's where the camera was, and . . . [i]t captured that conversation.").
10 The defendants listed Mellekas's testimony about appropriateness and probable cause in separate paragraphs.  App. B at 2.  But at deposition, Mr. Mellekas described them as the same inquiry: appropriateness concerns "any time you're going to lodge charges against someone, you take the elements of the crime . . . and ensure that it fits and is appropriate," Mellekas 78:14-18, while the existence of probable cause turns on whether "the actions and the facts and circumstances are appropriate and fit the elements of the charges."  *Id.* 78:24-79:6.  *See generally, e.g., Coffey v. Callaway*, 86 F. Supp. 3d 111, 119 (D. Conn. 2015) ("To ascertain the existence of probable cause, we look at the facts as the [police] officers knew them in light of the specific elements of each crime.") (internal quotation omitted).  Mr. Picard will therefore treat them as a single opinion.

employee.[11]

Mellekas's final offering to the Court, Opinion # 3, does not concern the defendants' recorded conversation.  Instead, it more generally opines that the defendants possessed the discretion to charge Mr. Picard with none–or a subset–of the offenses that they imagined him to have committed.[12]

To arrive at his proffered opinions, Mr. Mellekas employed two methodologies.  First, he reviewed the recorded conversations of the defendants as captured by Mr. Picard's camera, by playing the video on a computer and reading the subtitles that Mr. Picard added.[13]  Second, Mellekas interviewed the defendants and allowed each to "point out any discrepancies or anything they felt was off" about the videos.[14]

### 2.    Opinions 1 and 2 Are Inadmissible Because They Propose to Testify to, and Are Based on, Mr. Mellekas's Decision that the Defendants are More Credible Than Mr. Picard

The conversation on which Mr. Mellekas wishes to opine can be taken in two ways.  In one possible interpretation, the defendants' discussion of the need to "cover our ass" and "give him something,"[15] coupled with their consideration of Mr. Picard's past and present protest activity, demonstrates that his First Amendment activity motivated the charges against him.  The defendants' interpretation, on the other hand, casts the conversation as an innocuous discussion of how to deal with someone who may have broken the law.  To buttress their preferred interpretation, the defendants offer Opinions 1 and 2, in which a state police colleague proposes to testify that "I don't have a

---

11  App. B 2; Mellekas 78:8-23.
12  App. B 2; Mellekas 79:24-81:16.
13  Mellekas 77:1-19.
14  *Id.* 79:15-18.
15  Compl. ¶¶ 66, 72; Answer ¶¶ 66, 72 (admitting such).

problem with that conversation at all,"[16] and that the conversation was "similar to many he has heard and participated in during his law enforcement career."[17]  To admit Opinions 1 and 2, though, would breach two evidentiary firewalls that exist to preserve the jury's role as ultimate arbiter of credibility.

The first firewall is the rule against permitting one witness to testify to another's credibility.  *E.g., United States v. Scully*, 877 F.3d 464, 474–75 (2d Cir. 2017); *Dufort v. City of New York*, 874 F.3d 338, 351 (2d Cir. 2017).  That goes double for expert witnesses, whose status as experts makes their vouching for or against credibility an instant Fed. R. Evid. 403 prejudice problem.  *Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005).  By offering Opinions 1 and 2, the defendants propose that Mr. Mellekas weigh in and vouch that their interpretation of the recorded conversation is more worthy of credence than Mr. Picard's.  This he may not do.  *See Fate v. Vill. of Spring Valley*, No. 11-cv-6838, 2013 WL 2649548, at *6 (S.D.N.Y. June 13, 2013) (forbidding police defendants' expert from testifying "about what he believes actually happened or about the credibility of any witness").

The second firewall with which Opinions 1 and 2 collide is the prohibition against expert testimony that is based on credibility determinations.  "[W]itness A may not offer an opinion as to relevant facts based on A's assessment of the trustworthiness or accuracy of witness B where B's credibility is an issue to be determined by the trier of fact."  *United States v. Scop*, 846 F.2d 135, 142 (2d Cir. 1988).  This is so because introduction of an expert opinion resting in part on a credibility judgment puts the Court on the horns of a dilemma: either evaluate the expert opinion "in ignorance of an important foundation for that opinion," or, admit "otherwise inadmissible and highly

---

16  Mellekas 76:25.
17  App. B 2; Mellekas 78:19-23.

prejudicial" testimony from the expert laying out her credibility judgments.  *Id.*  *Cf.*
*United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999) (affirming exclusion of
expert testimony on the reliability of eyewitness identification, generally, as
undercutting police officers' testimony identifying the defendant and "effectively . . .
insert[ing the expert's] own view of the officers' credibility for that of the jurors").

Mr. Mellekas's opinion that the defendants' conversation was run-of-the-mill
rather than insidious rests on his impression that the defendants' version of events was
more credible than Mr. Picard's.  Mellekas "didn't find [Picard']s version to be as
credible" as the defendants' tales,[18] and believed that there was "[m]issing videotape" of
the incident, because "[defendant John] Barone gave me one account, which wasn't
captured on video."[19]  That is, on the basis of his believing the defendants over Mr.
Picard, Mellekas decided that the absence of video evidence supporting their version of
events cut against Mr. Picard rather than against the defendants, as common sense
dictates.[20]  *See Nimley*, 414 F.3d at 399 (striking expert testimony that papered over
defendants' contradictory testimony with an elaborate theory based on their credibility);
*Dibella v. Hopkins*, No. 01-cv-11779, 2002 WL 31427362, at *4 (S.D.N.Y. Oct. 30, 2002)
(striking expert testimony that "given the context, it would be difficult to see it any other
way" than the defendant's version of events).

Worse, Mellekas based his determination on evidence of Mr. Picard's interactions
with police on occasions *other than* the night in question.[21]  He did so for the express

18 Mellekas 70:4-6.
19 *Id.* 70:18-25.
20        This is a – an IA is not a criminal investigation.  It's preponderance of the evidence,
          as you know, and you're looking for 51 percent.  So what puts it over the edge is I
          have information from the troopers, their saying they did a certain – they took
          certain actions, which aren't captured when this guy has a video all the time, and
          it doesn't show.
     *Id.* 94:10-18.
21 *Id.* 68:9-13; *id.* 100:11-15.

purpose of "trying to look for credibility,"[22] that is, "evidence that [Picard] acted a certain way or didn't act a certain way which would support, you know, his version or their version."[23]

Finally, Mellekas formed a credibility opinion about Mr. Picard when he declined to be interviewed as part of the internal affairs procedure. Although Mellekas sought to interview Mr. Picard, charges against him were pending in the criminal division of the Connecticut Superior Court at the time,[24] and Picard declined–through counsel–to be grilled by police about the incident giving rise to those very charges.[25] Instead, Mr. Picard submitted an affidavit detailing his experiences. Astoundingly, Mellekas thought that Mr. Picard's refusal to submit to a police interview while criminal charges were pending against him was an indicator of untruthfulness. Mellekas viewed Mr. Picard as putting him in the position of "working with one hand tied behind my back because he won't come in and get interviewed, and I'm working off old videos . . . it's less than truthful in my opinion."[26] Picard's affidavit did nothing to sway Mr. Mellekas, of course: "I speak to a lot people, and I didn't believe him. I was speaking to him, but I didn't believe when I read his testimony, his affidavit. He offered that, and I saw that as he wasn't being truthful."[27]

Given such testimony, it is inescapable that his Opinions 1 and 2 rest on Mr. Mellekas's decisions about the parties' credibility. That renders both inadmissible and

---

22 Mellekas 68:18-19.
23 *Id.* 69:12-16.
24 *Id.* 88:10-14.
25 Mr. Mellekas did not think there was anything improper about bypassing Mr. Picard's counsel and asking Picard to come in and make statements about the incident giving rise to the pending charges. In Mellekas's view, his investigation was an internal affairs one, "not a criminal investigation . . . lawyers are only for criminal." *Id.* 89:7-9.
26 *Id.* 94:4-7. Mr. Mellekas was unsure about whether he could have paused his inquiry until the charges against Mr. Picard were resolved, citing an unwritten agreement with the employees' union known as the "April Accord," under which internal affairs inquiries are generally promised to be completed within ninety days. *Id.* 103:8-104:16.
27 *Id.* 96:13-17.

requires them to be stricken.

### 3.    Opinion # 1 is Prohibited Because it Proposes to Dictate Conclusions About the Defendants' Intent or Motivations

Mr. Mellekas's first opinion has admissibility problems beyond its resting on witness credibility.  By offering Opinion 1, the defendants propose to have Mr. Mellekas testify about what the defendants intended when they conversed amongst themselves on the night of September 11, 2015.  Based on the same methodology and fact sources that a jury would employ–listening to the recording of those conversations–Mellekas plans to testify that the defendants' conversation was intended to ensure that the criminal charges laid against Picard were appropriate, and that probable cause existed for them.  Such testimony is off-limits to experts.

To be admissible, expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a).  "[L]ay matters which a jury is capable of understanding and deciding without the expert's help" therefore fall short of meeting Rule 702(a)'s requirement.  *Andrews v. Metro N. Commuter R.R.*, 882 F.2d 705, 708 (2d Cir. 1989).  A person's state of mind or motivation is an paradigmatic example of a lay matter: when an expert reviews the same evidence that a jury would and reaches conclusions about what that evidence shows about a person or entity's intent or understanding, "[a]ny juror could have employed common sense to perform the same analysis."  *RFMAS, Inc. v. So,* 748 F. Supp. 2d 244, 268-9 (S.D.N.Y. 2010).

As a result, "belief about a party's state of mind is an improper subject for expert testimony," *Highland Capital Mgmt. v. Schneider*, 551 F. Supp. 2d 173, 182-3 (S.D.N.Y. 2008), as is expert testimony drawing inferences about the intent or motive of parties.  *Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546-7 (S.D.N.Y. 2004).  And so, courts

in our circuit reliably strike such testimony. *See, e.g., Andrews*, 882 F.2d at 708 (striking expert's testimony about the thought processes and feelings that led plaintiff to confusedly stare into the headlights of an oncoming train rather than step off the tracks); *Scott v. Chipotle Mexican Grill*, 315 F.R.D. 33, 46 (S.D.N.Y. 2016) (striking expert testimony that "assign[ed] motivation or intent behind [the defendant's] business model"); *In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d 396, 466 (S.D.N.Y. 2016) (forbidding defense expert from testifying "as to what type of [prescription] label the FDA would or would not have ultimately accepted or rejected" as "impermissible speculation as to the state of mind of the FDA."); *In re Xerox Corp. Sec. Litig.*, 746 F. Supp. 2d 402, 415 (D. Conn. 2010) (cautioning that because of helpfulness requirement, the challenged expert "would not be allowed to give testimony at trial as to what management knew or should have known."); *Stern v. Shammas*, No. 12-cv-5210, 2015 WL 4530473, at *4 (E.D.N.Y. July 27, 2015) (striking expert's theory about the 'real' reason the defendant arrested the plaintiff); *Board of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank*, No. 09-cv-3020, 2011 WL 6288415, at *8 (S.D.N.Y. Dec. 15, 2011) (striking expert testimony about what various employees of the defendant knew or understood, explaining that such items were "inference[s] that the finder of fact may choose to accept or reject").

This Court should reach the same result here, as Mr. Mellekas proposes to testify to the same prohibited subject matter. He wishes to instruct the Court that, in the defendants' recorded conversation, "it sounds like" they are rifling through a printed guide to Connecticut criminal offenses,[28] and that the conversation was intended to ensure that probable cause existed to charge Mr. Picard.[29] Because the jury will review

---

28 Mellekas 77:20-78:5.
29 *Id.* 78:24-79:10.

the same evidence, employ common sense as speakers of English, and interpret the defendants' words, tone of voice, and inflections, Mellekas's testimony on the subject is inadmissible and must be stricken.

**4.    Opinion # 3, That the Defendants Had the Discretion Not to Charge Mr. Picard, is Inadmissible Because it is Irrelevant**

Mr. Mellekas's final proffered opinion suffers from a different problem.  Although Opinion # 3 merely posits that the defendants possessed the discretion not to charge Mr. Picard with any crimes, it is a non-sequitur.  To be admissible, expert testimony must, among other things, "help the trier of fact . . . determine a fact in issue."  Fed. R. Evid. 702(a).  "Courts interpret this inquiry as one that asks if the testimony is relevant." *Washington v. Kellwood Co.*, 105 F. Supp. 3d 293, 308 (S.D.N.Y. 2015).

Whether the defendants had the ability to decide against charging Mr. Picard is not "of consequence in determining the action" here.  Fed. R. Evid. 401(b) (defining relevance).  Mr. Picard heartily agrees that the defendants could have decided not to slap any criminal charges on him.  The constitutional violation he asserts in Count Three turns on the defendants' ill-fated decision to charge him *at all*, not on their having charged only a subset of the offenses that they dreamed him to have committed.  Opinion # 3 is therefore inadmissible.

**5.      Conclusion**

Each of the three opinions that putative expert Stavros Mellekis proposes to testify to are inadmissible.  Opinions 1 and 2 make–and rest on–prohibited credibility judgments; Opinion 1 seeks to explain the defendants' motives or intent; and Opinion 3 addresses a subject not in dispute in this litigation.  The Court should therefore strike Mr. Mellekas's testimony in whole.

_____/s/ Dan Barrett_____
Dan Barrett (# ct29816)
ACLU Foundation of Connecticut
765 Asylum Avenue, 1st Floor
Hartford, CT 06105
(860) 471-8471
e-filings@acluct.org

_____/s/ Joseph R. Sastre_____
Joseph R. Sastre (# ct28621)
The Law Office of Joseph R. Sastre, LLC
67 Chestnut Street
Bristol, CT 06010
(860) 261-5643
joseph.sastre@gmail.com

*Counsel for Mr. Picard*

## Certificate of Service

I certify that a copy of foregoing and its appendices was filed electronically on January 24, 2019.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

_____/s/ Dan Barrett_____
Dan Barrett