UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**Michael Picard**,
*Plaintiff*

*v.*                                                                                                          No. 16-cv-1564

**Patrick Torneo**, **John Jacobi**, and **John Barone**,                        May 6, 2019
*Defendants*

## Motion to Preclude Testimony of Stavros Mellekas

In support of their motion for summary judgment in this police misconduct case, the defendants seek to introduce the testimony of a colleague who opines about his investigation into whether the defendants broke workplace rules during their encounter with plaintiff Michael Picard.  The testimony is based on the affiant's specialized training as a police employee, and is therefore only admissible if it satisfies Fed. R. Evid. 702's strictures for expert testimony.  But the testimony instructs the Court as to the defendants' states of mind and on legal conclusions to reach, is unhelpful, and is based on an unreliable methodology, so it does not meet Rule 702.

### 1.     Facts

In January 2018, the defendants disclosed Stavros Mellekas as one of their proposed experts, and Mr. Picard deposed him a month later.  Mellekas's purported expertise stems from his being assigned[1] to conduct a state police internal affairs investigation about whether the defendants broke any internal rules during their encounter with Mr. Picard.[2]  Mellekas did not decide which state police rule violations

---

1    Mellekas Depo. 46:12-22.  The transcript of Mr. Mellekas's deposition is attached to this motion as Exhibit 1.
2    *See* Mellekas Depo. 31:24-32:6 (testifying that the internal affairs charges to be investigated are formulated by "consult[ing] the operations manuals"), *id.* 72:11-20 (testifying about his findings as to

1

would be the subject of his inquiry; those choices had been made for him by his superiors.[3]  In December 2016, after obtaining the approval of his superior,[4] Mellekas issued a report concluding that no rule violations had occurred.[5]

In both his Fed. R. Civ. P. 26(a)(2)(C) summary,[6] and at deposition, Mellekas specified that he proposed to offer the Court just three opinions.[7]  The first opinion was that the conversation between the defendants captured by Mr. Picard's camera was intended to ensure that probable cause existed for the criminal charges laid against Picard.[8]  His second opinion ventured that the conversation was similar to conversations that Mellekas has heard throughout his career as a police employee.[9]  His final opinion was to be that the defendants possessed the discretion to charge Mr. Picard with none–or a subset–of the offenses that they imagined him to have committed.[10]

But eighteen months after his deposition, the defendants filed an affidavit from Mellekas in support of summary judgment offering none of those opinions, and substituting instead a previously undisclosed one: that the defendants' behavior was "reasonable."  *See* Stavros Mellekas Aff. [ECF # 76-7] ¶¶ 19, 20, 22, 41, 49; *see also id*. ¶¶ 31 (opining that one of the charges laid against Mr. Picard was "founded in fact"), 44

---

    those charges).
3  *Id*. 46:12-48:23; 49:2-15.
4  *Id*. 67:15-68:2.
5  *Id*. 72:5-10.
6  That summary is attached to this motion as Exhibit 2.
7  Mellekas Depo. 25:25-26:3 (confirming that he proposed no other testimony than that disclosed in writing).
8  The defendants disclosed Mellekas's testimony as dealing with appropriateness of, and probable cause for, the charges in separate paragraphs. Ex. 2 at 2.  But at deposition, Mr. Mellekas described them as the same inquiry: appropriateness concerns "any time you're going to lodge charges against someone, you take the elements of the crime . . . and ensure that it fits and is appropriate," Mellekas 78:14-18, while the existence of probable cause turns on whether "the actions and the facts and circumstances are appropriate and fit the elements of the charges."  *Id*. 78:24-79:6.  *See generally, e.g., Coffey v. Callaway*, 86 F. Supp. 3d 111, 119 (D. Conn. 2015) ("To ascertain the existence of probable cause, we look at the facts as the [police] officers knew them in light of the specific elements of each crime.") (internal quotation omitted).  Mr. Picard therefore treats them as equivalent.
9  Ex. 2 at 2; Mellekas 78:8-23.
10  Ex. 2 at 2; Mellekas 79:24-81:16.

(opining that the defendants "took appropriate action").  Generously construing his affidavit, Mellekas appears to have employed the methodology of speaking with the defendants while conducting the internal investigation,[11] viewing a video posted to YouTube,[12] and by visiting the site of Mr. Picard's protest.[13]

Mr. Picard now moves to preclude Mellekas's testimony.

2. **To be Admissible at All, Mellekas's Affidavit Must Pass Muster as Expert Testimony Because It is Based on his Specialized Training and Experience**

At the outset, the way in which Mellekas's affidavit prefixes his conclusions with past tense descriptions of what he wrote in his report, rather that by stating them directly, might tempt a reader to consider them lay opinions.  *See, e.g.,* Mellekas Aff. ¶¶ 19 ("*I found* that the officers here . . . had 'reasonable suspicion' . . ."), 22 ("*I found* that Trooper Barone's taking of Mr. Picard's . . . video camera . . . was reasonable . . ."), 43 ("*I concluded in my IA investigation* that Mr. Picard's claim . . . was 'unfounded' . . .") (emphases added).  However, our court of appeals forbids police from testifying as laypeople where their testimony is based on any specialized training or experience, and requires such testimony to be gauged by Rule 702 expert standards.

Lay opinions are admissible, in relevant part, only if they are "not based on scientific, technical, or other specialized knowledge," Fed. R. Evid. 701(c), to "ensure[] that a party will not evade the expert witness disclosure requirements . . . by simply calling an expert witness in the guise of a layperson."  *Id*. advisory committee's note.  Any opinion that "rests in any way upon . . . other specialized knowledge" of a witness must be treated as an offering of expert testimony under Fed. R. Evid. 702.  *United*

---

11  Mellekas Aff. ¶¶ 16, 17.
12  *Id*. ¶ 15.
13  *Id*. ¶ 23.

*States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005).  And so, our circuit has a bright-line rule: "the foundation requirements of Rule 701 do not permit a law enforcement agent to testify to an opinion so based and formed if the agent's reasoning process depended, in whole or in part, on his specialized training and experience."  *Id.* at 216.

That is precisely the forbidden disguise in which the defendants propose to cloak Mellekas.  Both his affidavit and his expert disclosure identify his purported value as lying in "his background, training and experience," and "the knowledge derived from his experience as a Connecticut State Police [o]fficer . . .."[14]  And his affidavit comprises a narration of his inquiry into whether Barone, Jacobi, and Torneo broke any of their employer's rules, from Mellekas's position within the state police office conducting internal affairs investigations: unquestionably specialized training and experience not possessed by laypeople.  Accordingly, the affidavit is only admissible if it satisfies Fed. R. Evid. 702's requirements.

3. **Mellekas's Testimony is Inadmissible Because Whether or Not the Defendants Broke any Workplace Rules is Irrelevant to this Litigation**

Viewed as would-be expert testimony, Mellekas's affidavit faces an immediate barrier of helpfulness.  The affidavit recites the steps taken and conclusions reached by Mellekas during the course of investigating whether the defendants violated any state police rules during their encounter with Mr. Picard.  As the question of whether state police employee conduct rules were violated is not at play in this litigation, expert testimony on that subject is inadmissible.

To be admissible, expert testimony must, among other things, "help the trier of

---

14  Ex. 2 at 1-2.  *See also* Mellekas Aff. ¶¶ 2-5, 14, 16 (reciting Mellekas's employment history, education, and placement in the internal affairs section of the state police).

fact . . . determine a fact in issue." Fed. R. Evid. 702(a). "Courts interpret this inquiry as one that asks if the testimony is relevant." *Washington v. Kellwood Co.*, 105 F. Supp. 3d 293, 308 (S.D.N.Y. 2015). Relevance, in turn, is gauged by whether a proffered piece of evidence will be "of consequence in determining the action." Fed. R. Evid. 401(b).

None of Mr. Picard's claims rely in any way on the state police employee conduct rules being broken or not. His claims turn on the federal law governing free expression, the right to receive information, and the right against unreasonable seizure, none of which are decided in reference to a non-party government employee's thoughts on the subject.

Mellekas's thoughts on reasonableness also contravene Fed. R. Evid. 702(c)'s requirement that expert opinion be "the product of reliable principles and methods." Mellekas describes the method by which he arrived at his conclusions as conducting an investigation into whether the defendants here violated any of their employer's rules when dealing with Mr. Picard. He conducted that investigation according to state police rules, with the input of his superiors and while balancing considerations of labor relations.[15] While such methods might lead to admissible testimony in, say, a case in which an employee claims that his employer failed to follow its internal investigatory procedures before demoting him, they are unreliable as against the objective inquiry provided by discovery and motion practice under this Court's aegis.

---

15  *See* Mellekas Depo. 27:2-28:8, 34:5-15 (describing collective bargaining agreement's effect on the categorization of complaint severity); *id.* 60:15-25 (testifying that employees being interviewed are permitted to bring union representation with them); *id.* 103:8-104:16 (describing the union's input on timing of the investigation).

5

### 4. Mellekas's Testimony Must be Precluded Because It Offers Prohibited Conclusions About the Defendants' States of Mind

Mellekas's testimony also founders in offering his conclusions about what the defendants knew, how they formed their beliefs, and whether those beliefs were proper. Such testimony is off-limits to experts.

"[L]ay matters which a jury is capable of understanding and deciding without the expert's help" are not fair game for expert testimony, because such testimony would be unhelpful to the court. *Andrews v. Metro N. Commuter R.R.*, 882 F.2d 705, 708 (2d Cir. 1989). A person's state of mind or motivation is a paradigmatic example of a lay matter: when an expert reviews the same evidence that a jury would and reaches conclusions about what that evidence shows about a person or entity's intent or understanding, "[a]ny juror could have employed common sense to perform the same analysis." *RFMAS, Inc. v. So,* 748 F. Supp. 2d 244, 268-9 (S.D.N.Y. 2010). As a result, "belief about a party's state of mind is an improper subject for expert testimony," *Highland Capital Mgmt. v. Schneider*, 551 F. Supp. 2d 173, 182-3 (S.D.N.Y. 2008), as is expert testimony drawing inferences about the intent or motive of parties. *Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546-7 (S.D.N.Y. 2004).

And so, courts in our circuit reliably strike such testimony. *See, e.g., Andrews*, 882 F.2d at 708 (striking expert's testimony about the thought processes and feelings that led plaintiff to confusedly stare into the headlights of an oncoming train rather than step off the tracks); *Scott v. Chipotle Mexican Grill*, 315 F.R.D. 33, 46 (S.D.N.Y. 2016) (striking expert testimony that "assign[ed] motivation or intent behind [the defendant's] business model"); *In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d 396, 466 (S.D.N.Y. 2016) (forbidding defense expert from testifying "as to what type of [prescription] label the FDA would or would not have ultimately accepted or rejected" as

6

"impermissible speculation as to the state of mind of the FDA."); *In re Xerox Corp. Sec. Litig.*, 746 F. Supp. 2d 402, 415 (D. Conn. 2010) (cautioning that because of helpfulness requirement, the challenged expert "would not be allowed to give testimony at trial as to what management knew or should have known."); *Stern v. Shammas*, No. 12-cv-5210, 2015 WL 4530473, at *4 (E.D.N.Y. July 27, 2015) (striking expert's theory about the 'real' reason the defendant arrested the plaintiff); *Board of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank*, No. 09-cv-3020, 2011 WL 6288415, at *8 (S.D.N.Y. Dec. 15, 2011) (striking expert testimony about what various employees of the defendant knew or understood, explaining that such items were "inference[s] that the finder of fact may choose to accept or reject").

This same result is unavoidable here, as Mr. Mellekas proposes to testify to the same prohibited subject matter. He wishes to instruct the Court about what the defendants "reasonably believed,"[16] what was "immediately apparent to" them,[17] what they could "reasonably infer,"[18] how Barone "formed []his opinion" about probable cause,[19] what facts the defendants would have thought to be "[o]f further concern,"[20] their being "very aware of" the day's date,[21] and why it was "reasonable for . . . Barone to wish" to document his confrontation of Mr. Picard.[22]

All such putative testimony is inadmissible. In order to resolve any disputes of material fact, the jury will review the record, employ common sense, and decide what motivated the defendants to charge Mr. Picard with crimes. There is no place for a colleague of the defendants who possesses no first-hand knowledge of the relevant

---

16  Mellekas Aff. ¶ 20.
17  *Id.* ¶ 27.
18  *Id.* ¶ 29.
19  *Id.* ¶ 38.
20  *Id.* ¶ 39.
21  *Id.* ¶ 40.
22  *Id.* ¶ 41.

events to opine about the contents of the defendants' heads.

### 5.  Mellekas's Testimony is Inadmissible Because It Proposes to Instruct the Court About Which Conclusions of Law to Reach on Qualified Immunity

Lastly, Mellekas's testimony appears to be an attempt to tell the Court what conclusion to reach on the legal question of qualified immunity.  *See* Defs.' Memo in Support of Summ. J. [ECF # 76-1] 50 (relying on Mellekas's having "found that none of the actions of the Defendants were unreasonable" as a basis for granting them immunity).  Experts may not do so.

"Legal conclusions offered by both lay and expert witnesses are inadmissible because it is not for a witness to instruct the court on the law." *Brown-Criscuolo v. Wolfe*, No. 05-cv-1486, 2007 WL 2439421, at *2 (D. Conn. Aug. 24, 2007).  That role belongs to the judge.  *See also Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992) ("This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion.").  Additionally, experts may not "usurp . . . the role of the jury in applying that law to the facts before it," as when an expert proposes to testify that a given set of facts satisfies–or fails to satisfy–a legal standard.  *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999) (internal quotation omitted).  *See also, e.g., Andrews*, 882 F.2d at 709 (concluding that expert testimony improperly opined that the facts demonstrated the defendant to have violated a standard of care); *accord* Fed. R. Evid. 704 advisory committee note (explaining that the rule continues to bar "the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day").

To the extent that Mellekas's affidavit proposes to tell the Court whether the

defendants' behavior was reasonable for Fourth Amendment purposes or whether probable cause existed to charge Mr. Picard with any crimes, it is inadmissible.  The Court will decide those questions on the facts available to it and the governing law, and an expert has no role in instructing the Court on that subject.

**6.    Conclusion**

The proposed testimony of Stavros Mellekas is based upon his specialized training and experience as a police employee, and therefore must be evaluated for admissibility against Fed. R. Evid. 702.  His testimony does not satisfy Rule 702 because it opines about the defendants' states of mind, instructs the Court about legal conclusions to reach, is unhelpful, and is based on an unreliable methodology.  The Court must therefore preclude the defendants from using his testimony in this dispute.

          /s/ Dan Barrett
Dan Barrett (# ct29816)
ACLU Foundation of Connecticut
765 Asylum Avenue, 1st Floor
Hartford, CT 06105
(860) 471-8471
e-filings@acluct.org

*Counsel for Mr. Picard*

## Certificate of Service

I certify that a copy of foregoing and its appendices was filed electronically on May 6, 2019. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

                                /s/ Dan Barrett
                                Dan Barrett