UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICHAEL PICARD,                          3:16cv1564(WWE)
        Plaintiff,

v.

PATRICK TORNEO, JOHN
JACOBI, JOHN BARONE

## MEMORANDUM OF DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

In this action, plaintiff Michael Picard alleges that defendants Patrick Torneo, John Jacobi, and John Barone, who are all employed by the Connecticut state police, violated his First and Fourth Amendment rights pursuant to 42 U.S.C. § 1983.   Specifically, plaintiff alleges violation of his First Amendment right to receive and memorialize information (count one); violation of his Fourth Amendment right against warrantless seizure of property (count two); and retaliation based on his exercise of his First Amendment right to free expression, specifically, his right to protest and record police activity (count three).

Plaintiff has moved for partial summary judgment on his claims alleging First Amendment and Fourth Amendment violations in counts one and two of his complaint.   Defendants have cross moved for summary

judgment on all claims of the complaint.   Plaintiff has also filed a motion to

preclude testimony of Stavros Mellekas.

For the following reasons, plaintiff's motion will be denied;

defendants' motion will be granted in part and denied in part; and plaintiff's

motion to preclude will be found as moot.

## BACKGROUND

The parties have submitted statements of fact with supporting

exhibits and affidavits.   The submissions reveal the following relevant

factual background.

Defendants Sergeant Barone, Trooper First Class Jacobi, and Master

Sergeant Torneo are all uniformed Connecticut State Police employees,

who were on duty on the evening of September 11, 2015, at a driving under

the influence (DUI) checkpoint on the on-ramp to Interstate 84 ("I-84") in

West Hartford, Connecticut.

Defendants admit that prior to the incident giving rise to this action,

defendant Torneo had been told by Hartford police Lieutenant Robert Allan

that he had been dealing with plaintiff for years.   At some point during

summer 2015, Allan informed Torneo that he suspected that "on

September 11, … that [plaintiff] might be out there" and that Torneo should

expect audio- and video-recording.   Allan explained:

> [Plaintiff] actually asked me if we were doing a checkpoint that week, and I said we were not because of the concert. I advised the sergeant that I was worried about Michael, that he was open carrying, that he was going to be there with other guys, that one of the signs consistently had the swastika on it and that it would—I believed would cause some concerns and that I was worried about Michael's safety.

The on-ramp at issue in this action was curved and contained an incline and decline between an entrance at Park Road and the location of the DUI checkpoint.   A large sign located on the right side of the on-ramp read:   "PROHIBITED:   PEDESTRIANS MOTOR BIKES MOTOR SCOOTERS BICYCLES."

A raised triangular island area surrounded by curbs existed at the Park Road entrance to the on-ramp.   The triangle had one edge running straight east-west along Park Road, while two of its edges curved into a point facing south towards the I-84 on-ramp.   Two entry lanes merged from Park Road onto the I-84 on-ramp, one on each side of the triangular island.

The triangle contained a green reflective road sign bearing the red and blue I-84 shield, an arrow pointing towards the access road, and the words "Hartford" and "Waterbury."   A telephone pole was situated on the

triangle's long edge along Park Road.

On the evening of September 11, 2015, plaintiff stood on the raised triangle on the south side of Park Road, while he and his friend, Steve Schafer, protested the DUI checkpoint on the basis that such checkpoints violate the motoring public's right to privacy and/or freedom of movement. Plaintiff accessed the triangular island area by walking on the shoulder of Park Road, on the same side as the triangle.

Plaintiff represents that he displayed a sign that stated, "Stay Calm and Remain Silent."[1]   Schafer displayed a sign that stated, "COPS AHEAD."   A swastika was drawn in the interior of the "O" on Schafer's sign.

Plaintiff had a smartphone as well as a video camera.   Plaintiff also carried a pistol in a holster on his right hip.

Defendants represent that Barone heard motorist complaints about a man waving a gun and holding a sign at the bottom of the on-ramp; and that Jacobi heard a complaint about a man with a gun at the bottom of the on-ramp.   Defendants maintain that they decided to investigate after

_____

[1] Defendants maintain that plaintiff's sign stated: "Keep Calm and Remain Silent."

receiving these motorist complaints.

Barone and Jacobi accompanied by non-defendant Trooper Jalbert proceeded toward the on-ramp.   Torneo followed with his police vehicle, which he parked near the triangular area.   Barone, Jacobi and Jalbert encountered plaintiff and Schafer as they reached the entrance to the on-ramp.   Barone approached plaintiff; Jalbert approached Schafer; and Jacobi provided cover.

Plaintiff began recording the interaction with Barone on his video camera at the same time that he held his sign.   Plaintiff claims that Barone slapped the video camera to the ground.   Barone disputes this representation of his conduct, but he does not dispute that plaintiff's camera ended up on the ground.

Defendant Barone removed the loaded firearm and pistol permit from plaintiff's possession.   Barone did not handcuff plaintiff, tell him that he was being detained, place him under arrest, or instruct him to sit down or stay in one place.   Barone took the pistol and permit over to defendant Torneo's police cruiser.   Barone stood with defendant Jacobi at the window of the cruiser, while Torneo remained at the wheel of the cruiser.

While defendants discussed plaintiff, plaintiff picked up his video

5

camera off the ground and aimed it at the three defendants.

Barone then walked back to plaintiff.   He grabbed plaintiff's video camera and told him, "It's illegal to take my picture."   Defendants have admitted that Barone "told plaintiff that it was illegal to take his picture without permission to do so;" and that Barone "secured" plaintiff's camera. Ans. ¶ 50 and 51.

Barone took plaintiff's video camera back over to Torneo and Jacobi. He placed it on the roof of Torneo's cruiser.   Neither Jacobi nor Torneo objected to the video camera's seizure.   The video camera remained on the cruiser's roof while the defendants discussed plaintiff and potential charges.   After Barone took the video camera, plaintiff used his cell phone to video record defendants.

None of the defendants informed plaintiff that they had a warrant to seize his camera; and none examined the camera, searched it, or treated it as evidence.

Torneo spoke by phone to Lieutenant Allan to determine whether plaintiff had any "grudges;" asked why plaintiff was challenging them at the DUI spot checks; and discussed plaintiff's past demonstrations.

Defendants Torneo and Barone verified that plaintiff's pistol permit

was valid, that his gun was not stolen, and that there were no warrants for his arrest.

On the video camera recording, Barone can be heard stating, "punch a number on this or do what?   Gotta cover our ass."   Torneo can be heard saying, "Let's give him something," and "then we claim in backup that we had multiple people stop and complain … but they didn't want to stay and give a statement."

Plaintiff was charged with two criminal infractions:   Reckless use of a highway by a pedestrian pursuant to Conn. Gen. Stat. § 53a-182; and creating a public disturbance in violation of Conn. Gen. Stat. § 53a-181a.

When Torneo started to drive off, plaintiff's video camera fell from the roof of his cruiser onto its hood.   Jacobi then returned the video camera to plaintiff.   Plaintiff's pistol and permit were also returned to him.   The total length of the encounter was approximately thirty minutes.

After the officers left, plaintiff and Schafer continued their protest. Plaintiff left the scene of his protest at 11:00 PM.

The infraction charges commenced a criminal prosecution of plaintiff in the Connecticut Superior Court.   On May 4, 2016, prosecutors filed a long-form information against plaintiff that omitted the public disturbance

charge against him.   On July 15, 2016, prosecutors entered a nolle

prosequi on the one remaining charge against plaintiff for violating Section

53a-182.   Plaintiff was not convicted of either of the two charges that were

laid against him.

## DISCUSSION

A motion for summary judgment will be granted where there is no

genuine issue as to any material fact and it is clear that the moving party is

entitled to judgment as a matter of law.   Celotex Corp. v. Catrett, 477 U.S.

317, 322 (1986).   The burden is on the moving party to demonstrate the

absence of any material factual issue genuinely in dispute.   American

International Group, Inc. v. London American International Corp., 664 F.2d

348, 351 (2d Cir. 1981).   In determining whether a genuine factual issue

exists, the court must resolve all ambiguities and draw all reasonable

inferences against the moving party.   Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 255 (1986).   "Only when reasonable minds could not differ as to

the import of the evidence is summary judgment proper."   Bryant v.

Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

If a nonmoving party has failed to make a sufficient showing on an

essential element of his case with respect to which he has the burden of

proof, then summary judgment is appropriate.   Celotex Corp., 477 U.S. at

323.   If the nonmoving party submits evidence which is "merely colorable,"

legally sufficient opposition to the motion for summary judgment is not met.

Anderson, 477 U.S. at 249.   This standard also applies to cross motions

for summary judgment.

**Count One**

Plaintiff maintains that defendants violated his First Amendment

rights to gather information when Barone slapped his video camera to the

ground as he approached plaintiff; and when Barone later took the video

camera away for the duration of the encounter.   Plaintiff argues that the

law protects his ability to photograph or videograph what any passing

pedestrian or motorist could observe with their senses.

Plaintiff relies on Supreme Court precedent establishing the right to

gather information as protected by the First Amendment.   See First Nat'l

Bank of Boston v. Bellotti, 435 U.S. 765, 783 (1978); Stanley v. Georgia,

394 U.S. 557, 564-5, 568 (1969).   However, the Supreme Court has also

established that even in a public forum, "the government may impose

reasonable restrictions on the time, place, or manner of protected speech,

provided the restrictions are justified without reference to the content of the

regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information."   Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989).   Neither the Supreme Court nor Second Circuit precedent has squarely established that an individual who is the subject of police activity has the right to record police performing their official duties. See McKenzie v. City of New York, 2019 WL 3288267, at *7 (S.D.N.Y. July 22, 2019).   However, circuits that have addressed whether there is a right to record police activity "have concluded that the First Amendment protects the right to record police officers performing their duties in a public space, subject to reasonable time, place and manner restrictions."   Gerskovich v. Iocco, 2017 WL 323645, at *8 (S.D.N.Y. July 17, 2017) ("The First, Third, Fifth, Seventh, Ninth, and Eleventh Circuits have found that the First Amendment protects the right to record police activity."); Higginbotham v. City of New York, 105 F. Supp. 3d 369, 379 (S.D.N.Y. 2015).   The circuits that have recognized the right have indicated that such right may not be applicable in certain situations such as "in particularly dangerous situations, if the recording interferes with the police activity, if it is surreptitious, if it is done by the subject of the police activity, or if the police activity is part of an

undercover investigation."   McKenzie, 2019 WL 3288267, at *7.

The Court will grant defendants' motion for summary judgment as to count one on the basis of qualified immunity.   Qualified immunity shields government officials performing discretionary functions from liability to the extent that their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).   The doctrine protects public officials from the risk of potentially ruinous monetary liability that would deter qualified people from public service, and it safeguards the public interest in having government employees act with independence and without fear of consequences.   Eng v. Coughlin, 858 F. 2d 889, 895 (2d Cir. 1988).

A party is entitled to summary judgment based on qualified immunity if the court finds that the rights of the plaintiff were not clearly established or that no reasonable jury could conclude that it was objectively unreasonable for the defendant to believe that he was not clearly violating an established federal right.   Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir. 1996).

In the first stage of the qualified immunity analysis, the court must consider whether the facts, taken in a light most favorable to the plaintiff,

could show a constitutional violation.   Cowan v. Breen, 352 F.3d 756, 761

(2d Cir. 2003).   If so, the court must determine whether the right in

question was clearly established at the time the violation occurred.

Saucier v. Katz , 533 U.S. 194, 201 (2001).

　　　In determining whether a right is clearly established, the court

considers whether it would be clear to a reasonable officer that his conduct

was unlawful in the situation he confronted.   Poe v. Leonard, 282 F.3d

123, 132 (2d Cir. 2002).   To determine whether a particular right was

clearly established at the time defendants acted, the court should consider:

(1) whether the right in question was defined with "reasonable specificity";

(2) whether the decisional law of the Supreme Court and the applicable

circuit court support the existence of the right in question; and (3) whether

under preexisting law a reasonable defendant official would have

understood that his or her acts were unlawful.   Jermosen v. Smith, 945

F.2d 547, 550 (2d Cir. 1991).   "When neither the Supreme Court nor this

court has recognized a right, the law of our sister circuits and the holdings

of district courts cannot act to render that right clearly established within the

Second Circuit."   Pabon v. Wright, 459 F.3d 241, 255 (2d Cir. 2006).

Thus, a qualified immunity defense is established where: "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998). The doctrine of qualified immunity recognizes that "reasonable mistakes can be made as to the legal constraints on particular police conduct." Saucier, 533 U.S. at 205.   However, qualified immunity applies if the officer's mistake as to what the law requires is reasonable.   Id.   Qualified immunity does not apply if, on an objective basis, it is obvious that no reasonably competent officer would have taken the actions of the alleged violation.   Malley, 475 U.S. at 341.   Summary judgment is appropriate when a trier of fact would find that reasonable officers could disagree. Lennon v. Miller, 66 F.3d 416, 421 (2d Cir. 1995).

Some district courts have held that in the context of a journalist, who is not subject to the police activity, the First Amendment right to record police activity in public is clearly established.   See Stolarik v. City of New York, 2017 WL 4712423, at *3 (S.D.N.Y. Sept. 7, 2017); Higginbotham v. City of New York, 105 F. Supp. 3d at 380.   However, the instant plaintiff was not a journalist or even a bystander; he was a subject of defendants'

13

investigation and performance of their official duties.   Accordingly,

plaintiff's right to record police activity or to record a police officer engaged

in his official duties was not "clearly established" within this Circuit at the

time of September 11, 2015, so that a reasonable defendant officer would

have understood from existing law that his conduct was unlawful.   See

Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003); see also McKenzie,

2019 WL 3288267, at *7; Rivera v. Foley, 2015 WL 1296258, at *9 (D.

Conn. March 23, 2015) (qualified immunity granted on basis that right to

record police officers engaged in ongoing investigation was not clearly

established as matter of constitutional law).[2]   Summary judgment will enter

in favor of defendants on this claim.

### Count Two

In count two, plaintiff asserts that the seizure of his camera violated

his Fourth Amendment right against unreasonable seizures.   Plaintiff and

---

[2] Connecticut General Statutes § 52-571j(b) provides:   "An employer of a
peace officer who interferes with any person taking a photographic or
digital still or video image of such peace officer or another peace officer
acting in the performance of such peace officer's duties shall be liable to
such person in an action at law, suit in equity or other proper proceeding for
redress."   However, this statute, which was not effective until October 1,
2015, does not create a clearly established First Amendment right to record
police in performance of official duties.

defendants have cross moved for entry of summary judgment on this claim.

"A seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property" resulting from a "governmental action." United States v. Jacobsen, 466 U.S. 109, 113 (1984).   Once property has been taken away from a person, it has been "seized" regardless of the duration of the seizure.   Rothman v. City of New York, 2019 WL 3571051, at 5 (S.D.N.Y. Aug. 5, 2019). Whether a "seizure" occurred under the Fourth Amendment is a question of law.   United States v. Peterson, 100 F.3d 7, 11 (2d Cir. 1996).   In this instance, defendants' conduct in taking and retaining the camera interfered with plaintiff's possessory interest in his camera, regardless of the fact that it was of short duration.   See Rothman, 2019 WL 3571051, at *5 (seizure was complete once pen was taken, despite fact that pen was returned shortly thereafter).   Although the camera may have continued to record, the seizure deprived plaintiff of his interest in possession and control of the camera.   Accordingly, the Court finds that a seizure did occur, and the Court must consider whether the seizure was reasonable.

The Fourth Amendment protects against unreasonable seizures of property.   Soldal v. Cook Cty, Ill., 506 U.S. 56, 62 (1992).   "To determine

15

whether a seizure is unreasonable, a court must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion and determine whether the totality of the circumstances justified the particular sort of seizure."   Carroll v. City of Monroe, 712 F.3d 649, 651 (2d Cir. 2013).   Seizures of personal property are generally considered to be unreasonable under the Fourth Amendment "unless accomplished pursuant to a judicial warrant, issued by a neutral and detached magistrate after finding probable cause," although exceptions to the warrant requirement exist.   Illinois v. McArthur, 531 U.S. 326, 330-1 (2001).   The Supreme Court has held that "some brief detentions of personal effects may be so minimally intrusive of Fourth Amendment interests that strong countervailing governmental interests will justify a seizure based only on specific articulable facts."   United States v. Place, 462 U.S. 696, 706 (1983) ("where the authorities possess specific and articulable facts warranting a reasonable belief that a traveler's luggage contains narcotics, the governmental interest in seizing the luggage briefly to pursue further investigation is substantial.").   In order for a warrantless seizure based on reasonable suspicion to be legal, the officer's conduct to seize the property

must have been justified at its inception and the seizure must have been

"reasonably related in scope to the circumstances which justified the

interference in the first place.   United States v. Hooper, 935 F.2d 484, 493

(2d Cir. 1991).   The Second Circuit explained:

> [A] law enforcement officer must have "a reasonable suspicion
> supported by articulable facts that criminal activity may be foot.   The
> term "reasonable suspicion" is not capable of a precise definition. It is
> clear, however, that an inchoate and unparticularized suspicion or
> hunch on the part of a law enforcement officer will not suffice to
> establish reasonable suspicion.   Rather, the officer must provide
> "specific reasonable inferences which [the officer] is entitled to draw
> from the facts in light of his experience.

Id.

Plaintiff argues that defendant Barone's seizure of the camera was

not justified at its inception because he cannot articulate any reasonable

suspicion, and that the seizure of the camera had no relationship to the

scope of the justification for the seizing the camera.   Plaintiff points out

that no state statute prohibits recording police activity.   He maintains that

the detention of the camera on top of the police cruiser served no purpose,

and that defendants made no effort subsequent to taking the camera to

conduct any investigation of the camera.

Defendants assert that "the undisputed evidence indicates that the

video camera could potentially be used as a weapon" and that any

"intrusion" on plaintiff was extremely minimal.   The Court disagrees.

The Court cannot find as undisputed that the video camera could have potentially been used as a weapon.   To make such a finding, the Court would have to construe the evidence in a light unfavorably to plaintiff. Similarly, the Court cannot find as a matter of law that the intrusion was "extremely" minimal.   It is appropriate for a jury to consider the balance of the quality of the intrusion and the alleged governmental interest to justify that intrusion.   The Court will deny the motions for summary judgment on the merits.   Additionally, the Court cannot find as a matter of law that qualified immunity is appropriate:   (1) the Fourth Amendment right against unreasonable seizure is clearly established; and (2) the undisputed facts do not establish that defendants were objectively reasonable or that they had at least arguable probable cause.   Summary judgment will be denied on this claim.

### **Count Three**

In count three, plaintiff alleges that defendants charged him with the infractions to retaliate against his protected activities of protesting and/or recording police activity.   Defendants argue that summary judgment must enter on plaintiff's retaliation claims because the defendants acted with

probable cause; no evidence indicates that defendants' actions were motivated or substantially caused by plaintiff's exercise of his First Amendment rights; and defendants' actions did not chill plaintiff's First Amendment rights.   They also assert that his claim of retaliation based on his recording of their activity must fail because it implicates no First Amendment right.

To state his First Amendment retaliation claim, plaintiff must show that: (1) he has a right protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by plaintiff's exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment.   Curley v. Village of Suffern, 268 F.3d 65, 76 (2d Cir. 2001). "Chilled speech is not necessary if plaintiff can establish that he suffered some other concrete harm."   Dorsett v. County of Nassau, 732 F.3d 157, 160 (2d Cir. 2013).

As to plaintiff's claim of retaliation based on his First Amendment right to record the defendants in their official duties, the Court will grant summary judgment on basis of qualified immunity due to the lack of a clearly established First Amendment right to record police activity as articulated relevant to count one.   Accordingly, the Court will proceed to

19

consider whether summary judgment should be entered on plaintiff's claim of retaliation based on his right to protest.

In a recent decision, the United States Supreme Court held that a "plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest."   Nieves v. Bartlett, 139 S. Ct. 1715, 1724 (May 28, 2019).   The Court elaborated that "probable cause speaks to objective reasonableness of an arrest," and "its absence will—as in retaliatory prosecution cases—generally provide weighty evidence that the officer's animus caused the arrest, where the presence of probable cause will suggest the opposite."   Id.   However, the Court qualified that the "no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been."   Id. at 1727.

Generally, probable cause to arrest exists when the officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."   Weyant v. Okst, 101 F.3d 845, 851 (2d Cir. 1996).   Probable

20

cause is a "fluid concept—turning on the assessment of probabilities in particular factual context…[;]" it is evaluated according to the totality of the circumstances.   Illinois v. Gates, 462 U.S. 213, 232-33 (1983); Jenkins v. City of New York, 478 F.3d 76, 90 (2d Cir. 2007).   "A tip from an anonymous informant—"though it will seldom demonstrate basis of knowledge and the veracity of an anonymous informant is largely unknowable—can form the basis of reasonable suspicion or probable cause if it is sufficiently corroborated."   Roberts v. Azize, 767 Fed. Appx. 196 (2d Cir. April 25, 2019).   The probable cause determination is objective; it should be made without regard to the officer's subjective motives or belief as to the existence of probable cause.   Barnett v. City of Yonkers, 2018 WL 469026, at *7 (S.D.N.Y. Sept. 28, 2019).

Defendants represent that they had reasonable suspicion to approach and investigate plaintiff on the basis of motorist complaints about a man waving or holding a firearm at the bottom of the ramp.   Defendants maintain reasonable suspicion was warranted in light of the date of September 11, which is a heightened law enforcement security awareness day; and the congestion of the area with many motorists stopped in traffic due to the DUI check.   Defendants argue that they had probable cause

because the motorist reports were corroborated when the defendants saw

plaintiff standing at the bottom of the ramp with a firearm in open view.

In considering whether summary judgment is appropriate on this

count, the Court must construe the facts in the light most favorable to

plaintiff, the non-moving party.   Consideration of defendants'

representation about motorist complaints requires a credibility assessment

that is inappropriate on a summary judgment determination.   Accordingly,

the Court must consider whether defendants had probable cause

independent of these asserted motorist complaints.

In this instance, defendants could observe that plaintiff had a firearm

in plain view while standing in congested area at the bottom of an on-ramp

I-84.   However, based on the record before the Court, the officers did not

observe any conduct indicating that plaintiff was engaged in disorderly

conduct in violation of Connecticut General Statutes § 53a-182,[3]  or that he

---

[3] "A person is guilty of disorderly conduct when, with intent to cause
inconvenience, annoyance or alarm, or recklessly creating a risk thereof,
such person: (1) Engages in fighting or in violent, tumultuous or threatening
behavior; or (2) by offensive or disorderly conduct, annoys or interferes
with another person; or (3) makes unreasonable noise; or (4) without lawful
authority, disturbs any lawful assembly or meeting of persons; or (5)
obstructs vehicular or pedestrian traffic; or (6) congregates with other
persons in a public place and refuses to comply with a reasonable official

was causing a public disturbance in violation of Connecticut General Statutes § 53a-181a.[4]

Defendants maintain further that their observation of plaintiff standing on the on-ramp triangle provided them with probable cause to believe that plaintiff had recklessly crossed a busy four-lane road without a crosswalk or the highway on-ramp to access the triangular island, thereby disregarding "his own safety or the safety of any person in the manner of his use of any street or highway" in violation of Connecticut General Statutes § 53-182. However, the officers did not observe plaintiff cross dangerously onto the triangle, and the degree of danger posed by plaintiff's situation on the triangle at the time presents a question of fact.   Construing the inferences of fact in favor of plaintiff, the Court finds that disputed issues of fact

---

request or order to disperse; or (7) commits simple trespass, as provided in section 53a-110a, and observes, in other than a casual or cursory manner, another person (A) without the knowledge or consent of such other person, (B) while such other person is inside a dwelling, as defined in section 53a-100, and not in plain view, and (C) under circumstances where such other person has a reasonable expectation of privacy."

[4] A person is guilty of creating a public disturbance when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he (1) engages in fighting or in violent, tumultuous or threatening behavior; or (2) annoys or interferes with another person by offensive conduct; or (3) makes unreasonable noise.

preclude a determination that probable cause existed as a matter of law.

Defendants maintain that there is no evidence to demonstrate that defendants acted with an improper motivation based on plaintiff's exercise of First Amendment rights.   "Specific proof of improper motivation is required in order for plaintiff to survive summary judgment on a First Amendment retaliation claim."   Curley, 268 F.3d at 73.   As specific proof of improper motivation, plaintiff points to defendant Torneo's discussion with Allan concerning plaintiff's history of protests and the likelihood that plaintiff would be protesting on September 11 and recording the police activity, and defendants' recorded discussion concerning plaintiff and potential charges.   Defendants dispute plaintiff's characterization of defendants' discussion heard on the recording.   Upon review, the Court finds that the recording raises questions of fact relevant to defendants' motivation in charging plaintiff.   Plaintiff has adduced evidence from which a reasonable jury could determine that defendants charged plaintiff with an improper retaliatory intent.   Similarly, in light of the factual questions concerning motorist complaints and probable cause, the Court cannot determine as a matter of law whether defendants would have taken the

same adverse action even in the absence of the protected conduct.   See
Cotarelo v. Sleepy Hollow Police Dep't., 460 F.3d 247, 251-2 (2d Cir.
2006).

As to the third element, plaintiff may show that his speech was
adversely affected by the government retaliation or that he has suffered
some other concrete harm.   Jennings v. City of Bridgeport, 2018 WL
950115, at *12 (D. Conn. Feb. 20, 2018).   In Smith v. Campbell, the
Second Circuit held that the "issuance of traffic tickets was an injury that
subjected [plaintiff] to a state action requiring that she either appear in
court, pay a fine, or both."   782 F. 3d 93, 100 (2d Cir. 2015); see also
Higginbotham v. City of New York, 105 F. Supp. 3d 369, 382 (S.D.N.Y.
2015).   In this instance, the charges required plaintiff to appear in
Connecticut Superior Court.   Accordingly, plaintiff has satisfied the third
element of his retaliation.

The Court will deny summary judgment in defendants' favor on the
merits of retaliation due to plaintiff's right to protest; the Court will not enter
summary judgment on the basis of qualified immunity since the undisputed
facts do not establish that defendants were objectively reasonable or that
they had at least arguable probable cause.

**Motion to Preclude**

In support of their motion for summary judgment, defendants rely upon affidavit averments from Colonel Stavros Mellekas, who conducted an investigation of defendants' conduct and found that they had "acted reasonably under the circumstances."   Plaintiff asserts that Mellekas's testimony constitutes expert opinion that does not satisfy Federal Rule of Evidence 702.

In their brief in support of summary judgment, defendants have argued there is "no evidence to suggest that no reasonable officer would take the actions Defendants took.   Instead, there is only evidence to suggest that Defendants acted reasonably under the circumstances."   In support of such assertion, defendants reference Mellekas's finding that defendants acted reasonably.   In opposition to the motion to preclude, defendants represent that Mellekas's finding of reasonableness is not offered for its truth, but merely for the fact that it occurred.

In his affidavit Mellekas represents, inter alia, that he conducted interviews of defendants and each trooper at the DUI spot check; that he viewed the entrance ramp to I-84; that he found that defendants had reasonable suspicion to detain, frisk, and search plaintiff, and to take his

permit and camera, pending their investigation of the motorist complaints; and that defendants were acting on information which indicated a crime was being committed.   The averments of Mellekas's affidavit do not render undisputed the facts that the Court has identified as requiring a credibility determination or as raising an issue of fact.   In light of this Court's ruling finding disputed issues of fact, the motion to preclude will be found as moot.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment [doc. 74] is DENIED; defendants' motion for summary judgment [doc. 76] is GRANTED as to count one and as to the First Amendment retaliation claim based on his asserted First Amendment right to record police activity in count

three; defendants' motion for summary judgment is otherwise DENIED as to

count two and three.   The motion to preclude [doc. 84] is found to be MOOT.

Dated this 16th day of September, 2019 at Bridgeport, Connecticut.


/s/Warren W. Eginton_____
WARREN W. EGINTON
SENIOR U.S. DISTRICT JUDGE